ENSENADA ESTATES, INC., PLAINTIFF AND APPELLANT, *v.* TREAS URER OF PORTO RICO, DEFENDANT AND APPELLEE.

APPEAL from the District Court of San Juan, Section 1, in an Action for the Refund of Taxes.

No. 1782.—Decided December 23, 1918.

ABANDONMENT.—The courts have inherent powers independent of statute to dismiss actions on the ground of abandonment.

ID.—APPEAL—DISCRETION OF COURT.—When a district court in the exercise of its

discretional powers renders judgment of dismissal for abandonment, the said judgment will not be reversed by the Supreme Court on appeal unless it is shown that there has been an abuse of discretion.

ID.—ID.—ID.—It will not be held in a particular case that a court has abused its inherent discretional power to enter a judgment of dismissal on the ground of abandonment unless it is clearly shown that the court abused that power; therefore it is necessary to review the record considered by said court in order to determine whether its action was justified.

ID.—ID.—Although the action had been dormant for fourteen months when the motion for dismissal was made on the ground of abandonment, yet as the parties were attempting to reach an agreement on the facts in order to facilitate the action of the court, and although this was being done at the instance of the defendant, we are of the opinion that the six or seven months following is not such a long time as to justify a judgment of dismissal on the ground of abandonment.

The facts are stated in the opinion.

Mr. O. B. Frazer for the appellant.

Messrs. Howard L. Kern, Attorney General, and Jaime Sifre, Jr., for the appellee.

MR. JUSTICE ALDREY delivered the opinion of the court.

The appellant corporation brought an action against the Treasurer of Porto Rico in the District Court of San Juan, Section 1, for the refund of a certain sum of money which it had paid under protest as taxes, alleging that the taxes had been unlawfully collected. The defendant demurred on the ground that the complaint did not allege facts sufficient to constitute a cause of action, and answered the complaint at the same time. The demurrer was heard first and sustained by the district court which consequently entered judgment dismissing the complaint, but an appeal having been taken from the said judgment, this court reversed it on July 28, 1916, and ordered further proceedings.

From that time no action was taken in the case in the lower court until fourteen months later, when, on October 9, 1917, the defendant filed a motion for an order of the court holding that the plaintiff had abandoned the action. The parties were heard on the motion and judgment was rendered as moved for by the defendant. From that judgment the plaintiff took the present appeal to this court.

Although there is a rule of the district court, adopted in 1917, to the effect that when calling the calendar at each regular term, the court, after at least five days' notice to the parties, may dismiss any action or proceeding which has been docketed for one year or more and in which no progress has been made, due to the negligence of the parties, unless good cause for the delay is properly shown to the court, yet the appellee does not apply this rule to the motion which gave rise to the judgment under consideration, and on his part the plaintiff-appellant contends that it is not applicable, therefore neither of the two parties relies on the said rule for discussing the justice or injustice of the decision appealed from. Consequently, as we also believe that the said rule is not applicable to this case, we will not consider it in detail, but will examine the appeal under other aspects, which are really those fully argued by the attorneys for the parties.

The appellant contends that the district court has jurisdiction to render a judgment of nonsuit only in the cases enumerated in section 192 of the Code of Civil Procedure, and that in all cases not included in that section judgment should be rendered on the merits of the case. But this question was fully and carefully considered by this court in the case of *Estate of Chavier* v. *Estate of Giráldez,* 15 P. R. R. 145, in which, after a thorough review of the matter and abundant citation of decisions of other courts, it was held that according to the settled jurisprudence of the courts of California, where our Code of Civil Procedure and that of Idaho originated, the courts have inherent power, independently of section 192 of the Code of Civil Procedure, which is similar to section 581 of that of California, to dismiss actions for want of prosecution and that orders to that effect will not be reversed by the Supreme Court unless abuse of discretion is proved. We will not further consider this point, which is sustained by California judgments of a later date than those cited by this court in that case.

This question being discarded, we may proceed to ascer-

tain whether the plaintiff justified to the court his failure to prosecute the action.

At the hearing on the defendant's motion the plaintiff presented an affidavit of its attorney, O. B. Frazer, stating in substance that he did not speed the action because Attorney R. W. Perkins, Jr., of the Department of Justice, who had charge of the brief and the argument of the case before the Supreme Court, spoke to the affiant shortly after this court rendered judgment holding that the complaint was sufficient and said that the Department of Justice was contemplating an appeal from the said judgment or of applying for a writ of certiorari; that on other occasions they also discussed the same matter and Perkins always expressed himself to the same effect, and therefore the affiant did not proceed with the action as he desired to facilitate the appeal; that on January 10, 1917, he spoke to Attorney General Kern in his office about various matters and Mr. Kern proposed to him to make a stipulation of the facts of the case in order to submit the same to the court and so facilitate the decision, a proposition which he accepted at first, although subject to a consultation with the officers of the corporation, who resided in New York; that he consulted them on the same day and shortly after was authorized to make the stipulation in a certain way and consequently he spoke to Mr. Kern during the months of February and March, but as they were unable to come to an understanding regarding the facts the plan was abandoned; that he then began to prepare the case with the intention of bringing it to trial as soon as he could secure the depositions of some material witnesses who were absent from Porto Rico, but found that H. S. Brandon, one of the plaintiff's most important witnesses, as he was the manager of the sugar factory at the time of the assessment complained of by the plaintiff and gave the orders for furnishing the Treasurer the reports for that purpose and personally appeared before the Board of Review and Equalization, as alleged in the complaint, could not be found, all that he could ascertain being

that he was in some part of England; that notwithstanding this he is disposed to go to trial, provided that he be given sufficient time to obtain the depositions of certain important witnesses who are in the United States and Cuba, and that he will dispense with Brandon's deposition if unable to obtain it within the time granted.

The defendant, in turn, also filed an affidavit of his attorney, Howard L. Kern, Attorney General of Porto Rico, setting forth in substance that, as the decision of the Supreme Court in this case was on the pleadings only and was therefore interlocutory and not final, he was unable to appeal to the Supreme Court of the United States or to the Circuit Court of Appeals; that although he could petition the Supreme Court of the United States for a writ of certiorari directed to the Supreme Court of Porto Rico, yet that writ was rarely granted in such cases and he knew of no case in which the writ had been issued by the Supreme Court of the United States against the Supreme Court of Porto Rico; that the writ had to be applied for within three months from the rendition of the judgment and that said period had expired on October 28, 1916; that neither the affiant nor, according to his information and belief, any person connected with the Department of Justice of Porto Rico had ever asked the plaintiff or its attorney in this action to abstain from taking any action in the case after the decision of this court, and that the failure of plaintiff or its attorney to prosecute the action cannot be attributed to any express or implied request on the part of the affiant or of any person acting in his name; that it is true that since this court rendered its decision of July 28, 1916, he had been contemplating an appeal therefrom in case the final decision in the case went against him; that it is true, as stated by Mr. Frazer, that they had several consultations regarding a proposed stipulation of the facts, but that the efforts of the affiant to obtain such an agreement were made exclusively in the name of the defendant; that the acts of the affiant in preparing the case for trial in behalf of the

defendant cannot serve as an excuse for plaintiff's allowing fourteen months to pass without taking any steps to prosecute his action, and that diligence on the part of the defendant is no excuse for lack of diligence on the part of the plaintiff.

The judge of the lower court having held, after considering both affidavits, that the action should be dismissed for failure of the plaintiff to prosecute the same, the question arises as to whether or not the court abused its discretion in exercising its inherent power to dismiss the complaint.

In order to hold in any case that a court abuses, or, better said, makes improper use of its inherent discretional power as a court or by express provision of law, it must appear clearly that the court abused that power; therefore we must consider the facts before the court in order to determine whether its ruling was just in this case.

The affidavits of the attorneys for the parties are contradictory as to whether any official of the Department of Justice told the attorney for the plaintiff that the Department was preparing to appeal from the judgment of this court, and in view of the fact that that judgment of this court was reviewable only by writ of certiorari, which up to the present time has never been issued against this court, and which, in fact, must be applied for within three months after the rendition of the decision, we may conclude that this was not a good reason for holding that the dereliction was justifiable or excusable, although this does not mean that such a statement may not actually have been made mistakenly to Mr. Frazer at some time.

There is one fact, however, on which the attorneys for the parties agree, and that is that from January to February or March they intended and attempted to make a stipulation of the facts to be presented to the court in order to facilitate the decision of the case, this having been proposed by the attorney for the defendant, yet none the less a proposition for an arrangement or agreement as to the facts at issue between

the parties, but finally the plan had to be abandoned because they could not reach an understanding.

While this act did not appear previously in the suit, nevertheless we understand from the evidence examined for the ruling on the motion that it cannot be denied that at that time the plaintiff, although not at his instance, but at the instance of the defendant, was endeavoring to speed the progress of his case and, although at the instance of the defendant, seeking means for facilitating its final decision.   In view of this fact we cannot hold that at that time he had abandoned his action.   From that time we have only his statement that he was trying to find Mr. Brandon, an important witness for him, but was unable to do so.

The existence of the war in Europe, the difficulties which it produced in all systems, the transfer of men from some places to others, are matters of public and judicial knowledge, therefore it is very probable that the plaintiff experienced difficulty in finding the said witness at a time when the United States and England were involved in that conflict.

In view of all these circumstances and even considering the dormancy of the action from the time of the failure of the negotiations of the attorneys for the parties for a stipulation of the facts, we think that until the filing of the motion for dismissal in October following, even disregarding the efforts of the attorney for the plaintiff to find his witnesses, there was no unreasonable lapse of time sufficient to justify a dismissal of the plaintiff's action, and therefore we are of the opinion that justice demanded that the rights of the plaintiff should not be pushed aside and that it should be permitted to proceed with its action, even taking into account the nature of it, in which by claiming the refund of money paid for taxes, that money is retained in the safes of the Treasury until the final decision of the suit.

For the foregoing reasons we are of the opinion that the

judgment appealed from should be reversed and that the action should be proceeded with.

*Reversed and remanded.*

Chief Justice Hernández and Justice Wolf concurred. Justices del Toro and Hutchison dissented.